1   Diane Corwin, Esq./CSB No. 114022
    **LAW OFFICES OF DIANE CORWIN**
2   **2600 Mission Street**
    **Suite 206**
3   **San Marino, CA 91108**
    **(626)441-9222**
4   corwinslaw@aol.com

5   Attorney for Plaintiffs XIAOLIANG LIU and CHUWEI ZHANG

6

7

8                    **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT – STATE OF CALIFORNIA**

10

11  XIAOLIANG LIU, an individual; CHUWEI        **CASE NO. 2:22 - cv - 06290**
    ZHANG, an individual,
12                                               **COMPLAINT FOR:**

13                                               1. **BREACH OF CONTRACT;**
                                                 2. **NEGLIGENT HIRING/SUPERVISION;**
14                                               3. **BREACH OF FIDUCIARY DUTY;**
                                                 4. **UNJUST ENRICHMENT;**
            Plaintiffs,                          5. **CONVERSION;**
15                                               6. **FRAUD;**
                                                 7. **INTENTIONAL**
16                                                  **MISREPRESENTATION**
17                                               8. **NEGLIGENT MISREPRESENTATION;**
                                                 9. **CONSPIRACY TO COMMIT FRAUD;**
            v.                                   10. **INTENTIONAL INFLICTION OF**
18                                                  **EMOTIONAL DISTRESS;**
                                                 11. **NEGLIGENT INFLICTION OF**
19                                                  **EMOTIONAL DISTRESS;**
    BANK OF AMERICA; EAST WEST BANK;             12. **DISCRIMINATION IN BUSINESS**
20  JC PACIFIC CAPITAL, INC., a California          **DEALINGS**
    corporation; YANMENG LU aka                  13. **BREACH OF THE COVENANT OF**
21  YOLANDA LU, an individual; WU DI, an            **GOOD FAITH AND FAIR DEALING;**
    individual also known as DI WU, an           14. **VIOLATION OF B&P §17200;**
22  individual; AND DOES 1 THROUGH 50,           15. **NEGLIGENCE.**
    INCLUSIVE,
23

24                                               **REQUEST FOR JURY TRIAL**

25  _____Defendants._____

26      COME NOW Plaintiffs XIAOLIANG LIU and CHUWEI ZHANG who complain, allege or

27  affirm and intend to establish at trial against Defendants BANK OF AMERICA, N.A.; EAST

28  WEST BANK; JC PACIFIC CAPITAL, INC., a California corporation; YANMENG LU also

                                  **1 OF 39**

known as YOLANDA LU, an individual; DI WU, also known as WU DI, an individual, and DOES 1 THROUGH 50, inclusive facts sufficient to constitute causes of action as set forth in the caption, above.

**PARTIES**

1.      At all times referred to in this Complaint, Plaintiffs, Xiaoliang Liu and Chuwei Zhang, were individuals residing in China, intending to purchase real property and reside in the County of Orange, City of Irvine, State of California. Said Plaintiffs are each natural persons and each over the age of eighteen (18) years.

2.      Based upon information and belief, Plaintiffs allege that Defendant BANK OF AMERICA ("BOA") is a banking institution, headquartered in Charlotte, North Carolina and doing business in the State of California operating over eight hundred bank branches in the State of California including the Los Angeles County, within the State of California.

3.      Based upon information and belief, Plaintiffs allege that Defendant EAST WEST BANK is a California corporation ("EWB"), with a business address of 135 North Los Robles Avenue, Pasadena, California 91101. Said business address is in the State of California, County of Los Angeles.

4.      Based upon information and belief, Plaintiffs allege that Defendant JC PACIFIC CAPITAL, INC. is a California corporation ("JC"), with a business address of 2100 Main Street, Suite 102, Irvine, CA 92614 in the State of California, County of Orange.

5.      Plaintiffs further believe, and upon such belief, allege that at all times herein JC PACIFIC CAPITAL, INC. is a California corporation, purporting to be engaged in real estate activities for which such activities are regulated by the State of California, Department of Real Estate, under license number 01990492. Under such license number JC PACIFIC CAPITAL, INC. is charged with the responsibility of the activities of all salespersons registered under its license with the State of California, Department of Real Estate.

6.      Based upon information and belief, Plaintiffs allege that YANMENG LU represented herself, as "YOLANDA LU" ("LU"), was an individual over the age of eighteen (18) and was an individual engaged in real estate activities, was a licensed real estate agent,

1  and was experienced and had expertise in assisting Chinese clients in exchanging foreign
2  currency for US dollars in order to enable clients to purchase real property in the US, and an
3  agent or employee of JC.

4      7.     Plaintiffs further believe, and upon such belief, allege that at all times herein
5  that LU purported, interchangeably, to act as a real estate agent which activities are
6  regulated by the State of California, Department of Real Estate under her salesperson
7  license number 02077752 with JC PACIFIC CAPITAL, INC., as her responsible broker.

8      8.     Plaintiffs further allege and believe that JC PACIFIC CAPITAL, INC. consented,
9  authorized or otherwise sanctioned LU's activities as further alleged herein through its failure
10 to supervise or remain apprised of LU's activities as further alleged herein.

11     9.     Based upon information and belief, Plaintiffs allege that WU DI, also
12 represented himself, as "DI WU" ("WU") an individual over the age of eighteen (18) and, at all
13 times mentioned herein Plaintiffs are without sufficient information or belief to allege in which
14 capacity Mr. WU purported to act in: whether as an individual, an individual engaged in real
15 estate activities or an individual purporting to exchange monies or engage in the trade of
16 monies.

17     10.    Plaintiffs do not know the true names and capacities of the Defendants sued
18 hereunder as Defendant Does 1 through 30, inclusive, and therefore sues these Defendants
19 by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege the true
20 names and capacities of said Doe Defendants when ascertained.

21     11.    Plaintiffs are informed and believe, and thereon allege, that each of the
22 fictitiously named Defendants is responsible in some manner for the occurrences alleged in
23 this Complaint and that the damages sustained by Plaintiffs were and continue to be the
24 direct, proximate and foreseeable cause of the acts and/or omissions of the Doe Defendants,
25 and each of them.

26     12.    Plaintiffs are informed and believe, and thereon allege, that each named
27 defendant and each Doe Defendant acted as agents for each other in doing the acts alleged
28 herein and that each Doe Defendant ratified and otherwise adopted such acts and

1 | statements as were performed, made or carried out by each other defendant.

2 | 13. Plaintiffs are informed and believe, and thereon allege, that at all times herein

3 | mentioned, each of the Defendants sued herein was the partner, agent, employee and/or co-

4 | conspirator of each of the remaining Defendants and was at all times acting within the

5 | purpose and scope of such partnership, agency, and/or employment and/or in furtherance of

6 | said conspiracy.

7 | 14. Plaintiffs are informed and believe, and thereon allege, that each Defendant

8 | authorized, ratified and/or approved the acts, statements, representation, conduct and/or

9 | omissions of each other Defendant as alleged herein.

10 | **JURISDICTION AND VENUE**

11 | 15. This court's jurisdiction is proper because the of the diversity of citizenship of

12 | the parties, and because defendants BOA and EWB maintain offices and do business in Los

13 | Angeles County, in the State of California. Plaintiff believes the various acts or omissions to

14 | act alleged here pertain to banks which are regulated by federal law, are thusly federal

15 | questions, further forming the bases of jurisdiction.

16 | 16. Venue over this action is proper in the United States District Court, Central

17 | District California because defendants BOA and EWB maintain offices and do business in

18 | Los Angeles County, in the State of California.

19 | **GENERAL ALLEGATIONS**

20 | 17. On March 6, 2020, Plaintiffs XIAOLIANG LIU ("XLIU") and CHUWEI ZHANG

21 | ("ZHANG") went to BANK OF AMERICA's branch located at 6519 Quail Hill Parkway, Irvine,

22 | CA 92603, and opened bank accounts with assistance from Carrie Gao, BOA's banker or

23 | employee. On that same visit, immediately following the establishment of a checking and a

24 | saving accounts in each of their names, XLIU and ZHANG each deposited a total of

25 | $100,000 into their accounts.

26 | 18. On July 6, 2020, Plaintiff XLIU opened an account with EAST WEST BANK,

27 | assisted by banker or employee, Eva Zhang, located at 1001 Fair Oaks Avenue, South

28 | Pasadena, CA 91030.

**COMPLAINT [FIFTEEN CAUSES OF ACTION]**

19.     Subsequent to XLIU's account opening at EWB, XLIU communicated with Eva Zhang, EWB's employee or banker. XLIU communicated to Ms. Zhang that he wished to exchange RMB, or Chinese yuan, to USD, United States dollars. The purpose of exchanging monetary currency was so that Plaintiffs XLIU and ZHANG could purchase a home in the United States.

20.     On August 13, 2022, Eva Zhang employee or banker of EWB, introduced XLIU to XANMENG LU, or "YOLANDA LU" ("LU"). Ms. Zhang represented that Ms. LU, could assist plaintiffs with exchange of currency and the purchase of their home in the United States.

21.     About two weeks later, from approximately August 25, 2020, to September 10, 2020, XLIU began a series of transfer of monies to LU and, subsequently, WU DI ("WU"). These monies were to be exchanged by LU who was aided by WU. That is, LU and WU would take the RMB or Chinese yuan funds tendered, deduct a service fee and return the monies to plaintiffs in the form of United States dollars by depositing said dollars into one of plaintiffs' accounts, either at BOA or EWB.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Against All Defendants)

22.     Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 21, inclusive, of this Complaint as if set forth in this cause of action in full.

23.     Pursuant to California Civil Code §1549, et seq., capable parties are bound by an agreement to perform a lawful act by their own volition for sufficient consideration. Additionally, where it may be deemed that no contract exists, then, by the parties' behavior, or reasonable reliance, promissory estoppel will act to effect compensation where a party has detrimentally relied on promises made by another party.

24.     BANK OF AMERICA ("BOA") is a bank purporting, through regulation, its market and consumer recognition, to do business as an organization which collects the funds of individuals or organizations, pledging to keep such funds secure until a further claim upon

1  the funds and charges fees for such secure keeping. To further its purposes of keeping such
2  funds secure, BOA purports to have several measures in effect including insurance or
3  verification of identity, keeping identity verification documents on file including, but not limited
4  to, driver license, passport copy or fingerprints.

5       25.    Given BOA's advertising, representations, marketing, presence in the banking
6  market and consumer recognition, BOA was believed by Plaintiffs XLIU and ZHANG to have
7  expertise, knowledge or experience in banking, such that BOA's security measures or
8  policies gave Plaintiffs confidence that their funds would be secure. BOA knew that failure to
9  adhere to security measures or policies would result in harm to its clientele, depositors or
10  members of the public who did business with BOA.

11       26.    On March 6, 2020, Plaintiffs XIAOLIANG LIU ("XLIU") and CHUWEI ZHANG
12  ("ZHANG"), went to BOA branch located at 6519 Quail Hill Parkway, Irvine, CA 92603, and
13  opened bank accounts with assistance from Carrie Gao, BOA's banker or employee. As part
14  of its process of determining whether BOA would choose to do business with Plaintiffs, BOA,
15  following a verification of Plaintiffs' identity, screened Plaintiffs for loss potential. Once BOA
16  determined the loss potential was within acceptable limits, BOA manifested its agreement to
17  service Plaintiffs and Plaintiffs' funds by issuing account numbers for checking, savings and a
18  debit card to each of the plaintiffs, XLIU and ZHANG.

19       27.    In reliance that BOA was in the business of banking as set forth above, XLIU
20  and ZHANG, upon issuance of account numbers by BOA, placed $100,000 each into their
21  respective BOA accounts, for a total of $200,000 into the accounts BOA purported it would
22  keep secure for each of Plaintiffs XLIU and ZHANG.

23       28.    Furthering BOA's pledge to Plaintiffs that it would keep their funds secure,
24  documents were provided to Plaintiffs at account opening on March 6, 2020, which stated
25  that deposits were insured by the "FDIC" or the Federal Deposit Insurance Corporation. Said
26  documents did not include any admonishment, notice, warning or communication of adverse
27  consequences or acts constituting waiver of the security of said funds.

28       29.    XLIU, ZHANG and BOA were in a contractual relationship with BOA: BOA

1  screened Plaintiffs, agreed to provide banking services in exchange for payment by Plaintiffs
2  of fees by its issuance of account numbers and Plaintiffs agreed to deposit funds with BOA
3  and trusted BOA would keep such funds secure. Said contractual relationship continued
4  among XLIU, ZHANG and BOA through and including at least October 21, 2020.

5       30.     On October 21, 2020, an unidentified female, accompanied by a younger male
6  walked into a BOA branch located at Woodbury Towne Center in Irvine, California and
7  succeeded in what law enforcement investigation has called, "ATO" or an 'account takeover'.
8  During this visit, the identified female overcame BOA's security measures—whether through
9  conspiring with BOA employees present at the BOA branch at the time or through deceit
10  such that BOA's security measures or policies failed.

11      31.     Whether aided by BOA's employees or alone on October 21, 2020, said female
12  succeeded in changing: the passport number, or identification on file, the telephone number
13  and mailing address on file to: 16839 Gale Avenue, City of Industry, CA and, additionally, this
14  unidentified female also succeeded in getting a new BOA debit card and temporary debit
15  card issued as to Plaintiff ZHANG's accounts.

16      32.     Whether said unidentified female was aided by BOA or BOA's security failed as
17  a result of her own individual ability, Plaintiffs are without sufficient information to assert.
18  Plaintiffs are also unable to assert the specific method in which the takeover of ZHANG's
19  BOA accounts was accomplished because BOA has not revealed or explained this to
20  Plaintiffs XLIU and ZHANG. Nonetheless, due to the failure of BOA's purported security
21  measures or policies, all account information was successfully changed into completely
22  different information which constituted a breach of BOA's duties under the contract that it and
23  Plaintiffs entered into on March 6, 2020.

24      33.     BOA knew that such failure of security measures and policies would result in
25  damages to the account holder which negligence resulted in damages to Plaintiffs XLIU and
26  ZHANG.

27      34.     EAST WEST BANK ("EWB") is a bank purporting, through regulation, its
28  marketing and consumer recognition, to do business as an organization which collects the

**COMPLAINT [FIFTEEN CAUSES OF ACTION]**

1 funds of individuals or organizations, pledging to keep such funds secure until a further claim
2 upon the funds and charges fees for such secure keeping. To further its purposes of keeping
3 such funds secure, EWB purports to have several measures in effect including insurance or
4 verification of identity, keeping identity verification documents on file including, but not limited
5 to, driver license, passport copy or fingerprints.

6     35.    Given EWB's advertising, representations, marketing, presence in the banking
7 market and consumer recognition, EWB was believed by Plaintiffs XLIU and ZHANG to have
8 expertise, knowledge or experience in banking, such that EWB's security measures or
9 policies gave Plaintiffs confidence that their funds would be secure. EWB knew that failure to
10 adhere to security measures or policies would result in harm to its clientele, depositors or
11 members of the public who did business with EWB.

12     36.    On or about July 6, 2020, Plaintiff XIAOLIANG LIU ("XLIU"), went to an EWB
13 branch located at 1001 Fair Oaks Avenue, South Pasadena, CA  91030. Eva Zhang, EWB's
14 banker/employee assisted plaintiffs. As part of its process of determining whether EWB
15 would choose to do business with Plaintiff, EWB, verified Plaintiff's identity, screened Plaintiff
16 for loss potential before making a determination to enter into a business relationship with
17 Plaintiff XLIU. Once EWB determined the loss potential was within acceptable limits, EWB
18 manifested its agreement to service Plaintiff and Plaintiff's funds by issuing account numbers
19 for checking, savings and debit card to XLIU.

20     37.    In reliance that EWB was in the business of banking as set forth in Paragraphs
21 34 and 35, above, XLIU, upon issuance of account numbers by EWB, placed monies into the
22 accounts EWB purported it would keep secure.

23     38.    XLIU and EWB were in a contractual relationship. EWB screened Plaintiff,
24 agreed to provide banking services in exchange for payment by Plaintiff of fees and Plaintiff
25 agreed to deposit funds with EWB and trusted EWB would keep such funds secure.

26     39.    Said contractual relationship was presumed by Plaintiff XLIU so he agreed to
27 communicate with Eva Zhang, EWB's banker/employee on or about the same date, the date
28 of account opening on or about July 6, 2020. On said date, XLIU communicated with Eva

1  Zhang believing that such communication would yield reputable results.

2      40.    In reliance upon EWB's reputation, Plaintiff XLIU communicated with Eva

3  Zhang, EWB's banker/employee his desire to convert RMB, or Chinese yuan, to

4  approximately four (4) million United States dollars so that XLIU and his wife, ZHANG could

5  purchase a home in the United States. Because this was also a monetary transaction, XLIU

6  trusted that Ms. Zhang's actions, as an EWB employee/banker, would lead to a reputable

7  service of money exchange and transfer.

8      41.    In the course of her dealings with Plaintiffs', EWB employee Eva Zhang

9  disclosed private personal information about Plaintiffs XLIU and ZHAANG, which constituted

10  a misappropriation of XLIU's personal information, gained by Ms. Zhang in the course of

11  business between XLIU with EWB. This misappropriation constituted a breach of contract by

12  EWB because EWB's security measures and policies failed when Ms. Zhang introduced

13  Plaintiff XLIU to LU and, who was subsequently aided by WU.

14      42.    Said breach by EWB, through Eva Zhang's misappropriation of XLIU's personal

15  information resulted in damages to XLIU in that the subsequent contact with LU, aided by

16  WU, resulted in Plaintiffs XLIU and ZHANG's dispossession of approximately over $1.5

17  million.

18      43.    Plaintiffs XLIU and ZHANG further allege that on November 17, 2020,

19  defendant WU DI ("WU") wrote a Promissory Note to Plaintiffs promising repayment of

20  $900,000 but which repayment WU has not completed. As such, WU is in breach of said

21  promissory note and, as a result of said breach by WU in his failure to repay the promised

22  $900,000 USD, Plaintiffs XLIU and ZHANG have been damaged.

23  **SECOND CAUSE OF ACTION**

24  **(Negligent Hiring/Supervision – Against BANK OFAMERICA, EAST WEST BANK and**

25  **JC PACIFIC CAPITAL, INC.)**

26      44.    Plaintiffs re-allege and by this reference incorporate each and every allegation

27  contained in paragraphs 1 through 43, inclusive, of this Complaint as if set forth in this cause

28  of action in full.

45.    "California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." <u>Doe v. Capital Cities</u> (1996) 50 Cal.App.4th 1038, 1054.

46.    Plaintiffs XIAOLIANG LIU ("XLIU") and CHUWEI ZHANG ("ZHANG") allege that they were harmed by BOA's employees, including Fabian Alvarez whose involvement is unknown to Plaintiffs, and that BOA is responsible for the harm caused by its employees because BOA negligently hired, supervised and trained them. Plaintiffs allege that BOA's negligence in hiring, supervision and training extended to it, through its employees' acts, occurred in two ways: first, as to the ATO occurring on October 21, 2020, and, second, to the investigation BOA purported to conduct as of October 28, 2020, which BOA termed "research" and not an investigation.

47.    BOA negligently hired, supervised, and trained its employees, including Fabian Alvarez. BOA hired said employees to assist it in keeping Plaintiffs' information, accounts and funds secure. However, said employees were inadequately screened, incompetent to perform their duties, unsupervised or inadequately trained because said employees allowed and enabled a completely preventable account takeover, or "ATO" by the unidentified female as set forth in Paragraphs 30 and 31, above.

48.    Said ATO on October 21, 2020, was accomplished by the complete replacement of identifying documents, which said initial documents formed the basis of the security of Plaintiffs' accounts at BOA. That said replacement of identifying documents was accomplished successfully was aided by BOA's employees as a result of each of their inadequate screening, incompetence, lack of supervision or lack of training—all of which BOA was responsible for maintaining and conducting. It was well known by BOA that any such failure posed a risk to its clientele, depositors or members of the public with whom BOA purported to service or do banking business for.

49.    Plaintiffs contend that it was BOA's duty to ensure that its personnel were screened, competent, supervised and trained and that such failure by BOA was a substantial factor in causing Plaintiffs' harm, damages or detriment.

50.     Plaintiffs XIAOLIANG LIU ("XLIU") and CHUWEI ZHANG ("ZHANG") allege that they were harmed by EWB's employees, including EVA ZHANG, and that EWB is responsible for the harm caused by its employees due to EWB negligence in hiring, supervising, and training them.

51.     EWB negligently hired, supervised and trained its employees, including EVA ZHANG. EWB hired said employees to assist it in keeping Plaintiffs' information, accounts and funds secure. However, said employees were inadequately screened, incompetent to perform their duties, unsupervised or inadequately trained, as employees including Ms. Zhang, failed to keep plaintiffs' information, account, and funds secure resulting in misappropriation of XLIU's personal information.

52.     XLIU believed that the services of EWB and its employees would lead to continued, reputable and secure service of his EWB account. Said actions of its employees, including Eva Zhang led to an ATO on October 21, 2020, and to the loss of Plaintiffs' monies in the failed currency exchange, resulting in damages as herein alleged.

53.     It was EWB's duty to ensure that its personnel were properly screened, competent, supervised and trained and that such failure by EWB was a substantial factor in causing Plaintiffs' harm or damages.

54.     Plaintiffs XIAOLIANG LIU ("XLIU") and CHUWEI ZHANG ("ZHANG") allege that they were harmed by JC PACIFIC CAPITAL, INC.'s employee, XANMENG LU also known as "Yolanda Lu" ("LU") who was aided by WU DI also known as DI WU ("WU").  WU was known to Plaintiffs XLIU and ZHANG to have assisted LU. As such, Plaintiffs further allege that JC is responsible for the harm caused by its employees or agents, LU and WU, as JC negligently hired, supervised and trained them.

55.     JC negligently hired, supervised and trained its employees, including LU and WU. JC was under a statutory obligation to supervise LU and WU. However, said employees were inadequately screened, incompetent to perform their duties, unsupervised or inadequately trained as said employees enabled an ATO, and to the loss of Plaintiffs' monies in the failed currency exchange.

56.   Pursuant to California <u>Business and Professional Code</u> §10015.1, <u>et seq.</u>, JC PACIFIC CAPITAL, INC. ("JC"), a broker with license number 01990492 issued by the State of California, Department of Real Estate ("DRE") is responsible for the supervision of real estate salespersons it reports to the DRE are under its supervision. This supervision is mandated to include training in the handling of monies received from any member of the public.

57.   On August 13, 2020, when Plaintiffs XLIU and ZHANG were introduced to XANMEN LU, or "Yolanda Lu" ("LU"), LU was a salesperson with license number 02077752 issued by the DRE. As one with "salesperson" and "active" status with the DRE, LU was purportedly supervised by JC.

58.   When Plaintiffs XLIU and ZHANG were introduced to LU, both Ms. Zhang of EWB and LU informed them that LU was a JC salesperson and, as such, Plaintiffs relied that LU was a reputable salesperson supervised by JC.

59.   As a result of JC's failure to supervise LU, LU worked with or hired WU DI, also representing himself as "DI WU" ("WU"). WU was one of the persons working with LU following her acceptance of monies from Plaintiffs XLIU and ZHANG. WU was responsible for assisting LU exchange RMB or Chinese yuan into US dollars. As a result of JC's failure to supervise LU and WU, Plaintiffs XLIU and ZHANG were harmed in an amount of at least $900,000.

60.   As a result of JC's failure to supervise LU, in accordance with JC's statutory obligations under the laws of the State of California, Plaintiffs XLIU and ZHANG were harmed. JC knew that its failure to supervise LU in the acceptance of any monies from any member of the public would result in harm or damage to said member. LU failed to transfer $900,000 due to Plaintiffs XLIU and ZHANG as promised and as a result XLIU and ZHANG suffered harm and damages.

///
///
///

COMPLAINT [FIFTEEN CAUSES OF ACTION]

## THIRD CAUSE OF ACTION

## (Breach of Fiduciary Duty – Against BANK OF AMERICA, EAST WEST BANK and JC PACIFIC CAPITAL, INC.)

61.     Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 60, inclusive, of this Complaint as if set forth in this cause of action in full.

62.     As established in <u>Wolf v. Superior Court</u> (2003) 107 Cal.App.4th 25, 29:

> A fiduciary relationship is ' " 'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. . . .' " ' "

63.     Plaintiffs allege that when each of the defendants undertook to act on behalf of and for the benefit of Plaintiffs XLIU and ZHANG, said defendants voluntarily accepted responsibility to act in good faith.

64.     Plaintiffs allege that on March 6, 2020, BOA undertook to engage in a business relationship with Plaintiffs XLIU and ZHANG, for banking services to keep their funds secure and, further to account for said keeping of funds, through its established banking practices— BOA voluntarily, following its screening process, undertook to act in the best interests of Plaintiffs XLIU and ZHANG.

65.     BOA knew that, in failing to act for Plaintiffs XLIU and ZHANG's best interests, through its failure to account or keep secure funds, that Plaintiffs XLIU and ZHANG would suffer harm or damages.

66.     BOA knew that Plaintiffs XLIU and ZHANG would suffer damages should BOA fail in its duty to keep Plaintiffs XLIU and ZHANG's funds secure, including supervision of its employees, adequate screening of its employees and ensuring that its security measures or policies were adhered to by its employees.

67.     On October 21, 2020, BOA breached its fiduciary duty to Plaintiffs when an

**COMPLAINT [FIFTEEN CAUSES OF ACTION]**

1  Unidentified female went to a BOA branch and BOA's employee failed to follow BOA's
2  established security measures and procedures for recordkeeping of identifying documents.

3      68.    On July 6, 2020, EWB engaged in a business relationship with Plaintiff XLIU,
4  for banking services to keep his funds secure and, further to account for said keeping of
5  funds, through its established banking practices. EWB voluntarily, following its screening
6  process, undertook to act in the best interests of Plaintiff XLIU.

7      69.    EWB knew that, in failing to act for Plaintiff XLIU's best interests, through its
8  failure to supervise or train its employees, that Plaintiffs XLIU would suffer harm or damages.

9      70.    EWB failed to properly hire, train and supervise its agents and employees,
10  including Eva Zhang and LU. Such failure to supervise resulted in damages or harm to
11  Plaintiff XLIU.

12      71.    At all times herein mentioned, Defendant JC PACIFIC CAPITAL, INC. ("JC")
13  undertook its licensing as issued by the State of California, Department of Real Estate,
14  number 01990492. JC voluntarily agreed to undertake a duty to act in the best interests of
15  and for the benefit of any person that any one of its salespersons made contact with for the
16  purpose of a real estate activity.

17      72.    As part of its licensing, JC voluntarily accepted its responsibility to account for
18  any of the acts of any of its salespersons, as reported to the DRE, XANMENG LU or
19  "Yolanda Lu" as to any real estate related activity undertaken by LU, particularly given LU 's
20  salesperson and active status, license number 02077752 as issued by the State of California,
21  Department of Real Estate. JC knew that its failure to act for the benefit of any member of the
22  public that Ms. Lu interacted with, particularly when it came to the acceptance of monies or
23  funds—that such failure would cause harm or damage to said member of the public.

24      73.    On August 25, 2020, Ms. Lu voluntarily accepted funds from Plaintiffs XLIU and
25  ZHANG. JC, through agent LU's and employee WU's acts, undertook to act for the benefit of,
26  in good faith, for Plaintiffs XLIU and ZHANG.

27      74.    On September 11, 2020, following a series of money transfers to LU, which JC
28  voluntarily undertook to supervise for the benefit of Plaintiffs XLIU and ZHANG LU failed to

do as promised – facilitate the exchange of RMB to USD and as a result of the acts or omissions of EWB, LU and WU, sustained damages as herein alleged.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment – Against All Defendants)

75.     Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 76, inclusive, of this Complaint as if set forth in this cause of action in full.

76.     As per <u>Ajaxo, Inc. v. E\*Trade Financial Corp.</u> (2010) 187 Cal.App.4th 1295, 1305:

> A defendant's unjust enrichment is typically measured by the defendant's profits flowing from the misappropriation. A defendant's profits often represent profits the plaintiff would otherwise have earned.

77.     Plaintiffs XLIU and ZHANG allege that, in breaching their duties, or failing to meet the duties defendants voluntarily undertook by breaching their contractual duties, by negligently hiring its personnel, by failing to meet its fiduciary duties to plaintiffs as set forth above—defendants BOA, EWB and JC.

78.     Defendants were unjustly enriched in that they were able to access Plaintiffs XLIU and ZHANG's information and dispossess Plaintiffs of Plaintiffs XLIU and ZHANG's monies to each of defendants' own benefit for which Plaintiffs have suffered harm or damages.

## FIFTH CAUSE OF ACTION

### (Conversion – Against All Defendants)

79.     Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 78, inclusive, of this Complaint as if set forth in this cause of action in full.

80.     As established in <u>Lee v. Hanley</u> (2015) 61 Cal.4th 1225, 1240, when a party wrongfully exercises dominion over the property of another or interferes with the property rights of another without said owner's consent, the property owner is harmed as a result of

1  said interference. Thus, the property owner is entitled to an award of damages.

2      81.    Here, Plaintiffs XLIU and ZHANG entrusted BOA with their funds and personal
3  identifying information. BOA, through its failure to meet its contractual obligations to Plaintiffs
4  XLIU and ZHANG, to supervise its personnel, to keep Plaintiffs' funds secure, to provide an
5  accounting to Plaintiffs as to how the ATO was accomplished on October 21, 2020,
6  constituted interference by BOA. Such interference by BOA was without Plaintiffs' consent
7  and Plaintiffs XLIU and ZHANG were harmed in amounts exceeding $1.21 million US dollars
8  "USD".

9      82.    EWB banker Eva Zhang interfered with Plaintiff XLIU's personal information,
10  secretly misappropriating it to her own use and thus interfered with Plaintiff XLIU's rights to
11  privacy. Such interference and conversion of Plaintiff XLIU's information was accomplished
12  by Ms. Zhang by EWB's failure to supervise Ms. Zhang. As such, EWB converted Plaintiff
13  XLIU's personal information for which Plaintiff XLIU has been damaged in an amount
14  exceeding $900,000.

15      83.    On August 13, 2020, Plaintiffs XLIU and ZHANG were introduced to LU by Ms.
16  Zhang. LU, unsupervised by JC, contrary to its duties under the laws of the State of
17  California, subsequently accepted funds from Plaintiffs XLIU and ZHANG on numerous
18  occasions; specifically, on August 25, 27 and 31, 2020 and September 3, 7 and 10, 2020—
19  LU accepted monies from Plaintiffs XLIU and ZHANG for the purposes of converting RMB to
20  USD for the purpose of purchase of real estate in California. Said monies exceeded $5
21  million USD. of JC's failure to supervise LU constituted an act of omission which inured to
22  interfere with Plaintiffs XLIU and ZHANG's property and Plaintiffs XLIU and ZHANG have
23  been harmed in an amount exceeding $900,000.

24                          **SIXTH CAUSE OF ACTION**

25                        **(Fraud – Against All Defendants)**

26      84.    Plaintiffs re-allege and by this reference incorporate each and every allegation
27  contained in paragraphs 1 through 83, inclusive, of this Complaint as if set forth in this cause
28  of action in full.

85.     Pursuant to California Civil Code §1571, et seq., Plaintiffs XLIU and ZHANG allege that all defendants engaged, jointly or severally, in acts constituting fraud through false statements or omissions where a duty was owed to induce Plaintiffs to engage in acts to their detriment and having no intent of performance.

86.     On September 10, 2020, LU, acting in concert with WU, JC and EWB received 6.881 million RMB, or Chinese yuan from Plaintiff XLIU which LU was to convert to $1 million US dollars. However, on September 11, 2020, LU returned to Plaintiff XLIU only $500,000 USD by depositing such into Plaintiff XLIU's EWB bank account. LU and/or WU, including JC through its failure to supervise LU and/or WU, still owed Plaintiff XLIU $500,000 USD.

87.     On or about September 28, 2020, LU and WU made a telephone call to Plaintiff XLIU. In this conversation LU and WU informed Plaintiff XLIU that they could only send funds through Interactive Brokers, a Hong Kong brokerage, and further that LU and WU required a copy of Plaintiff ZHANG's first page of her passport. LU and WU also told Plaintiff XLIU that they required all of his Bank of America banking information as well as a copy of his passport's first page. These statements made by LU and WU, aided by EWB and JC's lack of supervision were false.

88.     Following LU and WU statements—aided by EWB and JC's failure to supervise—of requiring at least ZHANG's passport first page on or about September 28, 2020, Plaintiff XLIU forwarded a copy of Plaintiff ZHANG's passport first page in the belief that this document was necessary to complete the exchange of monies amounting to approximately $500,000.

89.     Defendants LU and WU—aided by EWB and JC's lack of supervision—were intent on dispossessing Plaintiffs XLIU and ZHANG of monies, was demonstrated on October 17, 2020, when these defendants sent to Plaintiffs XLIU and ZHANG a screenshot showing that Interactive Brokers, the Hong Kong brokerage referenced in Paragraph 91, above, had approved an application for payment. This screenshot transmission to Plaintiffs XLIU and ZHANG from these defendants represented and assured that some portion of the $500,000 monies, still outstanding and owing were forthcoming or would soon be paid by being

1  deposited in one of Plaintiffs' EWB or BOA accounts. No such monies were received by
2  Plaintiffs XLIU and ZHANG.

3      90.  However, and unbeknownst to Plaintiffs XLIU and ZHANG, instead of remitting
4  any portion of the $500,000—Defendants LU and WU, aided by JC—went or aided the efforts
5  of an unidentified female who went to a BOA branch on October 21, 2020, and absconded
6  with Plaintiffs monies on deposit.

7      91.  On October 21, 2020, an unidentified female, accompanied by a by a younger
8  male went to a BOA branch located at Woodbury Towne Center in Irvine, California and
9  succeeded in what law enforcement investigation has called, "ATO" or an 'account takeover'.
10  During this visit, the identified female either overcame BOA's security measures or conspired
11  with BOA employees present at the BOA branch at the time to change, an identifying
12  document in Plaintiff ZHANG's BOA account, namely, the passport first page. Additionally,
13  said unidentified female, whether in concert with defendants including BOA and/or its
14  employees or acting alone, changed the phone number and mailing address on file and,
15  additionally, had another debit card and temporary debit card issued.

16      92.  On the same day, October 21, 2020, following or concurrently with the changes
17  made to Plaintiff ZHANG's BOA accounts, an alleged elderly gentleman in another BOA
18  branch attempting to also do an account takeover, or ATO, of Plaintiff XLIU's BOA accounts.
19  However, said elderly gentleman could not adequately answer verification questions and was
20  permitted by BOA and/or its employees to successfully depart the BOA branch without any
21  arrest or adverse action taken on such an attempt by the alleged elderly gentleman upon the
22  BOA accounts of Plaintiff XLIU.

23      93.  Following the ATO of Plaintiff ZHANG's BOA accounts by all Defendants,
24  whether jointly or severally, also on October 21, 2020—Defendants LU and WU, aided by
25  EWB, BOA and JC's acts of omission through their failure to supervise, hire or train their
26  employees—transferred $770,000 online from Plaintiff ZHANG's BOA saving account to her
27  checking account.

28      94.  Then, to avoid further detection and moving quickly on the same day—on

October 21, 2020, LU and WU—confident that they would remain undetected by Plaintiffs XLIU and ZHANG whom they knew were in another time zone in Beijing, China, and aided by the acts, failures or omissions of supervision in the face of a duty to do so by EWB, BOA and JC; LU and WU proceeded to another BOA branch, located at 22491 El Toro Road, Lake Forest, California. At said BOA branch, LU and aiding defendants made two (2) transfers from Plaintiff ZHANG's now taken over BOA checking account for $710,000 to YIQIN HUANG's BOA account and $500,000 to HAO TANG's BOA account. These transfers totaled $1.21 million dollars.

95.    In the meantime, from October 21 through 24, 2020, Plaintiff ZHANG attempted to access her BOA accounts but was unable to access her BOA accounts through her mobile app. Plaintiff ZHANG called BOA customer service and was informed that her identifying information, as on file, did not match what she was providing. As such, Plaintiff ZHANG did not pass BOA's verification process.

96.    It was not until October 27, 2020, Plaintiffs XLIU and ZHANG learned from Plaintiff ZHANG's telephone call to BOA's customer service phone line, from Beijing China, that someone had gone into a BOA branch on October 21, 2020, changed identifying information such as ZHANG's passport number as on file with BOA including the mailing address, telephone number and requested a new debit card and temporary debit card. Plaintiff ZHANG also learned that on October 21, 2020—two wire transfers from her accounts in the amounts of $500,000 and $710,000 had been made to other BOA accounts.

97.    Plaintiffs XLIU and ZHANG further allege that BOA acted in collusion, conspiracy or other agreement with LU and WU to change the identifying information on Plaintiff ZHANG's account which included the passport number, mailing address and telephone number. Such collusion, conspiracy or agreement is apparent given that BOA took no adverse action in the form of initiating a police report or investigation by any regulating authority. BOA acted in concert with LU and WU who were aided by EWB and JC's lack of supervision, and further intended to use its position to gain an advantage over Plaintiffs XLIU and ZHANG through its failures: to hire, supervise or train its employees in BOA's security

measures or policies of keeping monies secure; to adhere to its purported security measures or policies and to take adverse action against remaining defendants in the form of the reporting of criminal activity.

98.     BOA failed to disclose, reveal or explain to Plaintiffs XLIU and ZHANG how such a breach of BOA's security measures or policies for the keeping of monies secure occurred through the complete replacement of identifying documents.

99.     Plaintiffs XLIU and ZHANG learned of the ATO on or about October 27, 2020 Plaintiffs flew from Beijing, China to the United States, Irvine, California on or about November 12, 2020 to further inquire, investigate or mitigate losses as to transfers of Plaintiff ZHANG's monies including the filing of a statement with BOA, reporting to the Irvine Police Department which issued case number 20-13250 and Orange County Sheriff's Department which also issued case number 20-041902, and was further investigated by Sheriff David Wise.

100.    Thus, Plaintiffs XLIU and ZHANG contend that as a result of the taking of monies by all defendants as outlined above from Plaintiff ZHANG's BOA accounts—Plaintiffs XLIU and ZHANG were damaged in an amount exceeding $1.21 million USD, the approximate amount of monies taken from Plaintiff ZHANG's BOA accounts, as well as monies from the failed conversion or transfer purported to have occurred on September 11, 2020.

### SEVENTH CAUSE OF ACTION

### (Intentional Misrepresentation – Against All Defendants)

101.    Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 21 and paragraphs 84 through 100, above, of this Complaint as if set forth in this cause of action in full.

102.    Pursuant to California Civil Code §1710, et seq., Plaintiffs XLIU and ZHANG allege that all defendants engaged, jointly or severally, in making statements or representations that they knew was false when made, or such statement or representation was made recklessly without regard for the truth. Said statement or representation was made

1   by the defendants for the purpose acts inducing Plaintiffs' reliance and, when Plaintiffs
2   reasonably relied upon such statements or representations caused Plaintiffs' harm.

3       103.   Here, BANK OF AMERICA ("BOA") is a bank purporting, through its marketing,
4   consumer recognition, to do business as an organization which collects the funds of
5   individuals or organizations, pledging to keep such funds secure until a further claim upon the
6   funds and charges fees for such secure keeping. To further its purposes of keeping such
7   funds secure, BOA purports to have several measures in effect including insurance or
8   verification of identity, keeping identity verification documents on file including, but not limited
9   to, driver license, passport copy or fingerprints.

10      104.   Given BOA's purported expertise, knowledge, experience or recognition in
11  banking, Plaintiffs XLIU and ZHANG reasonably relied that BOA had such security measures
12  or policies in effect.  Plaintiffs XLIU and ZHANG believed that BOA was reputable as a result
13  of its advertisements, representations, reputation and widespread presence throughout
14  California.

15      105.   And so, on March 6, 2020, in reliance on BOA's advertisements,
16  representations, reputation and widespread presence throughout California, Plaintiffs
17  XIAOLIANG LIU ("XLIU") and CHUWEI ZHANG ("ZHANG"), went to a BOA branch located at
18  6519 Quail Hill Parkway, Irvine, CA  92603, and opened bank accounts with assistance from
19  Carrie Gao, BOA's banker or employee.

20      106.   In reliance that BOA was in the business of banking as set forth in Paragraphs
21  24 and 25, above, XLIU and ZHANG, upon issuance of account numbers by BOA, placed
22  $100,000 each, for a total of $200,000 into the accounts BOA purported it would keep
23  Plaintiffs XLIU and ZHANG's monies secure.

24      107.   Furthering BOA's pledge to Plaintiffs that it would keep their funds secure, were
25  documents provided to Plaintiffs at account opening on March 6, 2020, which stated that
26  deposits were insured by the "FDIC" or the Federal Deposit Insurance Corporation. Said
27  documents did not include any admonishment, notice, warning or communication of adverse
28  consequences or acts constituting waiver of the security of said funds. Thus, Plaintiffs XLIU

1  and ZHANG placed their monies or funds in BOA bank accounts because they believed their
2  funds were secure.

3     108.   However, Plaintiffs XLIU and ZHANG learned on October 27, 2020, that
4  Plaintiffs' monies as entrusted to be held by BOA were not secure. October 21, 2020, an
5  unidentified female went to a BOA and further aided by BOA's unsupervised, incompetent or
6  untrained employees, and succeeded in the complete replacement of identifying documents
7  as purported to be on file with BOA for Plaintiff ZHANG's benefit or account security.

8     109.   On the same day, October 21, 2020, following or concurrently with the changes
9  made to Plaintiff ZHANG's BOA accounts, an alleged elderly gentleman in another BOA
10 branch attempted an account takeover, or ATO, of Plaintiff XLIU's BOA accounts. However,
11 said elderly gentleman could not adequately answer verification questions and was permitted
12 by BOA and/or its employees to successfully depart the BOA branch without any arrest or
13 adverse action taken on such an attempt by the alleged elderly gentleman upon the BOA
14 accounts of Plaintiff XLIU.

15    110.   The failures of BOA as set forth hereinabove added to Plaintiffs damages and
16 for which Plaintiff now seek relief from this court as against BOA.

17    111.   On or about September 28, 2020, LU and WU—aided by EWB and JC's lack of
18 supervision—made a telephone call to Plaintiff XLIU. In this conversation LU and WU
19 informed Plaintiff XLIU that they could only send funds through Interactive Brokers, a Hong
20 Kong brokerage, and further that LU and WU required a copy of Plaintiff ZHANG's first page
21 of her passport. LU and WU also told Plaintiff XLIU that they required all of his Bank of
22 America banking information as well as a copy of his passport's first page. These statements
23 made by LU and WU, aided by EWB and JC's lack of supervision were false.

24    112.   Following LU and WU statements of requiring at least ZHANG's passport first
25 page on or about September 28, 2020, Plaintiff XLIU forwarded a copy of Plaintiff ZHANG's
26 passport first page in the belief that this document was necessary to complete the exchange
27 of monies amounting to approximately $500,000 which were still outstanding from the last
28 transfer occurring on or about September 10, 2020.

113. However, the true reason that LU and WU—aided by EWB and JC's failure to supervise—requested identifying documents from Plaintiffs XLIU and ZHANG was because LU and WU were planning to dispossess Plaintiffs of monies held in their EWB and BOA accounts.

114. That defendants LU and WU—aided by EWB and JC's lack of supervision were intent on dispossessing Plaintiffs XLIU and ZHANG of monies, was demonstrated on October 17, 2020, when these defendants sent to Plaintiffs XLIU and ZHANG a screenshot showing that Interactive Brokers, the Hong Kong brokerage referenced in Paragraph 91, above, had approved an application for payment. This screenshot transmission to Plaintiffs XLIU and ZHANG from these defendants represented and assured that the $500,000 monies, still outstanding and owing were forthcoming or would soon be paid by being deposited in one of Plaintiffs' EWB or BOA accounts. No such monies were received by Plaintiffs XLIU and ZHANG.

115. Unbeknownst to Plaintiffs XLIU and ZHANG at the time, instead of remitting any portion of the $500,000 Defendants LU and WU, aided by EWB and JC's lack of supervision—went or aided the efforts of an unidentified female who walked into a BOA branch on October 21, 2020 to abscond with Plaintiffs' monies, as described in Paragraphs 29 through 32 incorporated herein, as set forth above.

116. Plaintiffs XLIU and ZHANG further contend that as a result of the taking of monies by all defendants as outlined above from Plaintiff ZHANG's BOA accounts—Plaintiffs XLIU and ZHANG were damaged in an amount exceeding $1.21 million USD, the total approximate amount of monies taken from Plaintiff ZHANG's BOA accounts and monies from the failed conversion or transfer purported to have occurred on September 11, 2020.

117. Plaintiffs XLIU and ZHANG seek damages from defendant BOA for its intentional misrepresentation that Plaintiffs' funds would be secure with BOA; for damages against EWB for its failure to supervise its banker, employee, Eva Zhang who introduced Plaintiffs XLIU and ZHANG to LU who was aided by WU; and additionally for damages from JC for its failure to supervise LU.

1   ///

2   ///

3                    **EIGHTH CAUSE OF ACTION**

4            **(Negligent Misrepresentation – Against All Defendants)**

5        118.    Plaintiffs re-allege and by this reference incorporate each and every allegation

6   contained in paragraphs 1 through 78, above, of this Complaint as if set forth in this cause of

7   action in full.

8        119.    Pursuant to California <u>Civil Code</u> §1710, <u>et seq.</u>, Plaintiffs XLIU and ZHANG

9   allege that all defendants engaged, jointly or severally, in making statements or

10  representations that they had no reasonable grounds, insufficient knowledge or factual basis

11  when making such statement or representation. Any such statement or representation was

12  made by the defendants, whether jointly or severally, with the intent that Plaintiffs rely on said

13  statement or representation. Plaintiffs then reasonably relied upon such statements or

14  representations which caused Plaintiffs' harm.

15       120.    On July 6, 2020, Plaintiff XLIU, reasonably relied on EWB's reputation,

16  advertising, marketing materials—and consented to the establishment of an account with

17  EWB, as set forth, above, in Paragraphs 18 through 21, 30 and 31 and further incorporated

18  herein by reference. When, Plaintiff XLIU further communicated with EWB's

19  banker/employee, Eva Zhang, Plaintiff XLIU reasonably relied upon Eva Zhang's

20  employment status with EWB that any such communication was secure and trustworthy.

21       121.    Plaintiff XLIU believed that EWB was trustworthy, Plaintiff XLIU reasonably

22  relied upon the representations of its employee or banker, Eva Zhang. Plaintiff XLIU, believed

23  that all communications coming from Ms. Zhang, including subsequent communications from

24  other sources, such as LU and WU that she worked with, were reputable, trustworthy and,

25  therefore, reasonably relied upon such because the contact was initiated through EWB.

26       122.    However, the basis for Ms. Zhang's statements as to the fact that LU, aided by

27  WU, could help him was without any basis in fact or reasonable grounds. Given Plaintiff

28  XLIU's reasonable reliance on the statements of Ms. Zhang, of EWB, LU and WU—Plaintiff

**COMPLAINT [FIFTEEN CAUSES OF ACTION]**

1  suffered harm or damages.

2      123.  On October 27, 2020, through Plaintiff's ZHANG's persistence in reaching

3  customer service, Plaintiff ZHANG made a claim of fraudulent activity on her BOA account

4  with BOA. Plaintiff ZHANG was then informed that BOA would proceed to investigate her

5  claim and that such investigation would take sixty (60) days and monies paid then.

6      124.  Most notably, on October 28, 2020, following Plaintiffs XLIU and ZHANG's

7  discovery of Plaintiff ZHANG's account takeover ("ATO"), as outlined more specifically in

8  Paragraphs 84 through 100 above and incorporated by reference herein, BOA sent a letter to

9  Plaintiffs XLIU and ZHANG acknowledging Plaintiffs' claim of fraud and representing to

10  Plaintiffs XLIU and ZHANG that BOA would "research" or investigate the fraudulent activity

11  on Plaintiff ZHANG's account. Said letter stated, "We're here to help." Also, this letter from

12  BOA enclosed a form for Plaintiff ZHANG to complete, titled, "Fraud Statement of Claimant".

13      125.  However, BOA conducted no such investigation. Instead, at the lapse of the

14  sixty (60) days, BOA did not provide any findings of its purported "research" as stated on its

15  October 28, 2020, letter.

16      126.  On December 27, 2020—the sixtieth day from when Plaintiff ZHANG initially

17  submitted her claim of fraud to BOA, BOA stated to Plaintiffs XLIU and ZHANG that BOA

18  required an additional ninety (90) days in which to further provide to Plaintiffs BOA's findings.

19      127.  Plaintiffs XLIU and ZHANG relied on BOA's statements to Plaintiffs that BOA

20  was actively investigating Plaintiffs' claim when, in reality, BOA did nothing despite its

21  cooperation with law enforcement.

22      128.  Plaintiffs XLIU and ZHANG continued to reasonably rely on BOA's purported

23  "research" or investigation when, through March 21, 2021—BOA made repeated requests

24  that Plaintiffs forward the identical materials previously forwarded which Plaintiffs XLIU and

25  ZHANG repeatedly forwarded to BOA upon each of its repeated requests.

26      129.  On May 20, 2021, Plaintiff ZHANG telephoned BOA to inquire as to the status,

27  conclusion or progress of BOA's purported "research" or investigation. In said call by Plaintiff

28  ZHANG, BOA informed her that the case was closed with BOA refusing to pay based on the

1 | fact that account information was leaked by the account holder, causing the funds to be
2 | stolen.

3 |      130.   BOA refused to provide a result or decision on its "research" to Plaintiffs XLIU
4 | and ZHANG. BOA and falsely represented that it needed additional time to "research". BOA's
5 | claims that they were completing an "investigation" were false, and constituted statements by
6 | BOA which had no basis in fact, no reasonable grounds or insufficient knowledge. BOA's
7 | representations to Plaintiffs XLIU and ZHANG that it was actively conducting "research" or an
8 | investigation when, in fact, it was doing <u>nothing</u> was for the purpose of delaying or feigning
9 | diligence upon which Plaintiffs XLIU and ZHANG reasonably relied, all to Plaintiffs XLIU and
10 | ZHANG harm or damage.

11 | **NINTH CAUSE OF ACTION**

12 | **(Conspiracy to Commit Fraud – Against Defendant BANK OF AMERICA and JC**
13 | **PACIFIC CAPITAL, INC.)**

14 |      131.   Plaintiffs re-allege and by this reference incorporate each and every allegation
15 | contained in paragraphs 1 through 130, above, of this Complaint as if set forth in this cause
16 | of action in full.

17 |      132.   As established in <u>IIG Wireless, Inc. v. Yi</u> (2018) 22 Cal.App.5th 630, 652:

18 |         Conspiracy is. . .a form of vicarious liability by which one
        defendant can be held liable for the acts of another.. . . The
19 |         defendant in a conspiracy claim must be capable of committing
        the target tort.
20 |

21 |      133.   Beginning with LU, who was aided by WU, on or about September 28, 2020, LU
22 | and WU made a telephone call to Plaintiff XLIU. In this conversation LU and WU informed
23 | Plaintiff XLIU that they could only send funds through Interactive Brokers, a Hong Kong
24 | brokerage, and further that LU and WU required a copy of Plaintiff ZHANG's first page of her
25 | passport. LU and WU also told Plaintiff XLIU that they required all of his Bank of America
26 | banking information as well as a copy of his passport's first page. The true reason for LU and
27 | WU's telephone call to Plaintiff XLIU was to dispossess Plaintiffs XLIU and ZHANG of any
28 | and all monies held in their accounts. Thus, LU and WU agreed, planned and had the

1  capability of completing, and did complete, such dispossession of monies.

2      134.   Here, when the unidentified female went to a BOA branch as further set forth in

3  paragraphs 84 through 100, above, and incorporated herein by reference and accomplished

4  an account takeover ("ATO")—said female was able to accomplish the complete replacement

5  of identifying documents and key account information as a result of BOA's negligent hiring,

6  supervision or training of its employees. As a result, Plaintiffs' have suffered harm or

7  damages.

8      135.   Additionally, as set forth in Paragraphs 54 through 60, JC had a duty to

9  supervise all salespersons it reported to the DRE were under its employ. More specifically,

10 JC had a duty to supervise or train LU in any monies had, accepted or processed from any

11 member of the public that any such monies were, in accordance with the laws of the State of

12 California and/or DRE regulations to be processed in accordance with JC's established trust

13 procedures and/or policies. JC did none of that as LU accepted and processed for exchange

14 monies or funds from Plaintiffs XLIU and ZHANG freely, without any supervision, monitoring

15 or training by JC whatsoever. Thus, JC committed the acts of which Plaintiffs XLIU and

16 ZHANG complain of including, but not limited to, being dispossessed of monies or funds and

17 for which Plaintiffs have suffered harm or damages.

18                    **TENTH CAUSE OF ACTION**

19 **(Intentional Infliction of Emotional Distress – Against BANK OF AMERICA, JC PACIFIC**

20    **CAPITAL, INC., YANMENG LU (aka "Yolanda Lu") and DI WU (aka "Wu Di"))**

21     136.   Plaintiffs re-allege and by this reference incorporate each and every allegation

22 contained in paragraphs 1 through 43, paragraphs 61 through 117 and paragraphs 132

23 through 135, above, of this Complaint as if set forth in this cause of action in full.

24     137.   Pursuant to Hughes v. Pair (2009) 46 Cal.4th 1035, 1050-1051:

25            A cause of action for intentional infliction of emotional distress
              exists when there is '(1) extreme and outrageous conduct. . .with
26            the intention. . .or reckless disregard for the probability of causing,
              emotional distress; (2) the plaintiff's suffering severe or extreme
27            emotional distress; and (3) actual and proximate causation of the
              emotional distress by the defendant's outrageous conduct.
28

**COMPLAINT [FIFTEEN CAUSES OF ACTION]**

138.   As set forth in Plaintiff XLIU and ZHANG's causes of action for fraud and intentional misrepresentation as set forth in paragraphs 84 through 117, above, Plaintiffs XLIU and ZHANG's sustained severe or extreme emotional distress caused by the extreme and outrageous conduct of BOA, due to BOA complete failure to enact and enforce security measures or policies.

139.   BOA allowed the complete replacement of said identifying document specifically, Plaintiff ZHANG's passport information including passport number - a document upon which BOA purported to rely in its decision to offer to open the account. BOA, by and through its unsupervised, incompetent or untrained employees permitted and enabled the change of such identifying document including mailing address, telephone number and included issuance of all new debit cards.

140.   This failure by BOA constituted an intentional or extreme disregard for Plaintiffs XLIU or ZHANG, who entrusted that—in what should have been a routine banking relationship—their funds, as kept by BOA's were secure. Additionally, that BOA would not subsequently conduct diligent "research" or investigate what occurred with Plaintiffs funds while feigning an investigation also constituted BOA's intentional or extreme disregard for Plaintiffs XLIU and ZHANG's suffering. As a result of BOA's conduct, Plaintiffs have suffered harm or damages. As a result of the ATO Plaintiffs suffered a monetary loss in an amount exceeding 1.21 million USD, and other related damages.

141.   Plaintiffs XLIU and ZHANG further allege and incorporate herein by reference Paragraphs 30, 31 and 51 through 53, above. As a result of EWB's failure to supervise all persons under its employ, as it knew was its legal duty to do so, and to further supervise or train said persons in the acceptance or demand of any monies from any member of the public constituted an intentional failure to so act was egregious as to warrant an award of damages to Plaintiffs because such intentional disregard for Plaintiffs was with a careless disregard for the possibility of Plaintiffs' suffering harm or damages.

142.   Plaintiffs XLIU and ZHANG, further allege and incorporate herein by reference Paragraphs 54 through 60, above. As a result of JC's failure to supervise all salespersons

**COMPLAINT [FIFTEEN CAUSES OF ACTION]**

under its employ, as it knew was its legal duty to do so, and to further supervise or train said salespersons in the acceptance or demand of any monies or personal possessions from any member of the public constituted a failure to act under the law so egregious as to warrant removal, suspension, confiscation or other change in 'active' status of its license. JC knew that any acts warranting a change from 'active' status with the DRE were extreme and outrageous and Plaintiffs XLIU and ZHANG were harmed or damaged.

143.   Thus, when LU, aided by WU, engaged in acts which included acceptance of monies from Plaintiffs XLIU and ZHANG without any supervision from JC whatsoever, such acceptance of monies and exchange of monies constituted extreme and outrageous conduct because LU and WU knew that such exchange or conversion of monies was not only against her obligations as a salesperson, but it was foreseeable that the substantial financial loss would result in Plaintiffs XLIU and ZHANG suffering severe or extreme emotional distress.

144.   When LU and WU did not complete the exchange of RMB to USD as promised, and when Plaintiffs later learned of the deception and fraud, Plaintiffs XLIU and ZHANG suffered severe and extreme emotional distress.

145.   As set forth in paragraphs 86 through 123, above, and incorporated by reference herein—defendants LU and WU did not engage in any conduct that was consistent with the exchange or movement of monies from RMB, or Chinese yuan to US dollars as promised; rather, LU and WU—aided by JC's lack of supervision—dispossessed Plaintiffs XLIU and ZHANG of an amount in excess of $900,000. In doing so, LU and WU extreme and outrageous conduct constituted a reckless disregard for causing Plaintiffs XLIU and ZHANG's severe or extreme distress. As a result of such acts by defendants, LU and WU—aided by JC's lack of supervision—Plaintiffs XLIU and ZHANG have suffered harm or damage.

## ELEVENTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress – Against BANK OF AMERICA, EAST WEST BANK, JC PACIFIC CAPITAL, INC.)

146.   Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 145, above, of this Complaint as if set forth in this cause

1  of action in full.

2      147.   In addition to breaching a duty to Plaintiffs XLIU and ZHANG, an award of

3  damages may be made for emotional distress caused as a result of said breach. Burgess v.

4  Superior Court (1992) 2 Cal.4th 1064, 1076.

5      148.   As further set forth in the incorporated paragraphs as to Plaintiffs XLIU and

6  ZHANG's causes of action for Breach of Contract, Negligent Hiring/Supervision and

7  Negligent Misrepresentation, Defendant BOA had a duty to act with reasonable prudence, in

8  accordance with its contractual duties as set forth above. It was foreseeable to BOA that its

9  failure to fulfill its contractual obligations, through its negligent hiring, supervision or training

10 would result in emotion distress, harm or damages to Plaintiffs XLIU and ZHANG.

11     149.   Nonetheless, BOA failed to meet its contractual obligations, to fulfill its duties of

12 hiring, supervision or training, to conduct "research" or an investigation of fraudulent claims

13 with diligence and these failures by BOA caused Plaintiffs XLIU and ZHANG's emotional

14 distress for which they have suffered harm or damages.

15     150.   As set forth in the incorporated paragraphs, or Plaintiffs XLIU and ZHANG's

16 causes of action for Breach of Contract, Negligent Hiring/Supervision and Negligent

17 Misrepresentation, Defendant EWB had a duty to act with reasonable prudence, in

18 accordance with its contractual duties as set forth above. It was foreseeable to EWB that its

19 failure to fulfill its contractual obligations, through its negligent hiring, supervision or training

20 would result in emotional distress, harm or damages to Plaintiffs XLIU and ZHANG.

21     151.   Specifically, when on July 6, 2020, EWB's employee/banker, Eva Zhang

22 communicated with Plaintiff XLIU—EWB failed to supervise Ms. Zhang's activities as to

23 Plaintiff XLIU. EWB's lack of supervision, and its duties to uphold its contractual duties and

24 ensure representations were not without reasonable grounds, as made to Plaintiff XLIU

25 continued through Ms. Zhang's introduction of Plaintiff XLIU to XANMENG LU also known as

26 "Yolanda Lu" ("LU"). When Ms. Zhang introduced Plaintiff XLIU to LU, EWB's duties to

27 Plaintiff XLIU was breached through Ms. Zhang's introduction of LU who was then aided by

28 WU.

152. Because LU and WU were introduced to Plaintiffs XLIU and ZHANG through Ms. Zhang, EWB's employee/banker, Plaintiff XLIU believed that his dealings with any such persons were reputable. However, as was more specifically shown in paragraphs 84 through 117, above, LU and WU were not reputable, were not properly supervised by EWB and, as the result of such breach of duty by EWB, Plaintiffs XLIU and ZHANG suffered emotional distress and were, thusly, harmed or damaged.

153. When JC reported to the DRE that it employed LU, aided by WU, JC represented to the DRE that it supervised LU which—despite its statutory duty to do so—JC did not do, nor did JC provide any guidance to LU of the manner in which to handle any monies accepted from any member of the public. It was JC's imperative duty to ensure that LU, aided by WU, was aware of JC's trust accounting practices. However, JC failed to do so and breached that duty, among others, and as a result Plaintiffs XLIU and ZHANG were harmed or damaged.

**TWELFTH CAUSE OF ACTION**

**(Discrimination in Business Dealings – Against BANK OF AMERICA, EAST WEST BANK and JC PACIFIC CAPITAL, INC.)**

154. Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 20, inclusive, of this Complaint as if set forth in this cause of action in full.

155. Pursuant to California Civil Code §51, et seq., defendants had a duty to ensure that

> All persons within the jurisdiction of this state are free and equal and no matter what their sex, race, color. . .ancestry, national origin. . .are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever.

156. This means that any business establishment within the State of California may not engage in any acts where said business treats any person differently based on—more particularly, national origin. Any person making any such claim against a business must that said business made a distinction denying full and equal services, and that the business's

conduct was motivated by said distinction resulting in the distinguished person's harm.

157.   BOA distinguished Plaintiffs XLIU and ZHANG based on their national origin in BOA's marketing to patrons of Asian descent and, regarding BOA's conduct as to the ATO and "research" or investigation, as more fully set forth in paragraphs 90 through 93 and 126 through 33 incorporated herein by reference, respectively.

158.   BOA specifically marketed to non-English speaking customers of Asian descent in order to increase profits. BOA knew that such customers would be vulnerable and rely on BOA's expertise to assist said non-English speaking Asian customers in opening accounts and placing their monies on deposit in BOA accounts.

159.   Further, BOA carried on its conduct, differentiating Plaintiffs by permitting the complete replacement of identifying documents, by conducting "research" or an investigation in a manner falling below BOA's conduct as to others not in the same national origin category as Plaintiffs XLIU and ZHANG because BOA believed that its conduct would go undetected or unchecked given Plaintiffs' national origin.

160.   Thus, Plaintiffs XLIU and ZHANG were harmed or damaged as the result of BOA's conduct, conduct which BOA does not engage in as to its patrons of a different national origin than plaintiffs here.

161.   EWB engaged in conduct distinguishing plaintiffs from other persons, targeting them because of their national origin, intending that—specifically, directing its marketing and business at persons of Asian origin—that it could gain an advantage over such persons. EWB supervised, trained and hired Ms. Zhang to engage EWB's patrons so as to further its business endeavors as to persons of Asian origin. Ms. Zhang's conduct, of introducing Plaintiff XLIU to LU and WU was an effort of distinguishing Plaintiff XLIU for his national origin because, additionally, LU and WU, were also of Asian descent or origin who used this commonality with plaintiffs to defraud them of monies which caused Plaintiffs XLIU and ZHANG harm or damage.

162.   JC also directed its business to persons of Asian origin intending to gain an advantage over such persons. More notably, JC—as per its listing maintained by the DRE—

1  employs only persons of Asian origin. In doing so, it is JC's intent to engage in conduct that

2  distinguishes persons like Plaintiffs XLIU and ZHANG.

3      163.   Plaintiffs XLIU and ZHANG further contend, even though it was unbeknownst to

4  them at the time, that despite JC's obligation to supervise as more fully set forth in

5  paragraphs 54 through 60, above, JC's exclusivity as to persons of Asian origin was intended

6  to mislead plaintiffs into believing that they would be in good hands, or treated in a

7  trustworthy, reputable manner. However, JC's conduct included a complete failure to

8  supervise LU and WU which resulted in Plaintiffs XLIU and ZHANG's harm or damages.

9  **THIRTEENTH CAUSE OF ACTION**

10  **(Breach of the Covenant of Good Faith and Fair Dealing – Against BANK OF AMERICA**

11  **and EAST WEST BANK)**

12      164.   Plaintiffs re-allege and by this reference incorporate each and every allegation

13  contained in paragraphs 1 through 163, inclusive, of this Complaint as if set forth in this

14  cause of action in full.

15      165.   Pursuant to Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654,

16  658:

17          There is an implied covenant of good faith and fair dealing in
        every contract that neither party will do anything which will injure

18          the right of the other to receive benefits of the agreement.

19      166.   Where parties enter into a contract and one party substantially performs while

20  another party conduct prevents the substantially performing party from gaining the full benefit

21  of the contract, then the non-performing party is deemed to not have acted fairly and in good

22  faith for which the substantially performing party may claim damages.

23      167.   Here, as set forth in paragraphs 22 through 43 and incorporated by reference

24  herein, Plaintiffs allege that they contracted with BOA for the safekeeping of their funds.

25  Further, BOA pledged that it had security measures or policies in place, but as detailed in

26  paragraphs 84 through 117, above, BOA enabled an ATO and failed to "research" the events

27  surrounding such ATO, all the while representing to Plaintiff ZHANG that it was fulfilling its

28  obligations to 'research' or investigate as to how BOA's purported security measures or

policies were overcome. BOA failed to diligently conduct any such "research" by delaying on a response to Plaintiff ZHANG, by requesting documents previously provided to BOA and by denying payment to Plaintiff ZHANG's claim.

168. Specifically, the failure of BOA's security measures or policies constitute a breach of the implied covenant and, additionally, BOA's purported "research" also was a breach of the implied covenant for which Plaintiffs XLIU and ZHANG have suffered harm or damage.

169. Here, as set forth in paragraphs 22 through 43 and incorporated by reference herein, Plaintiffs allege that they contracted with EWB for the safekeeping of their funds. Further, EWB pledged that it had security measures or policies in place, but as detailed in paragraphs 84 through 130, above, EWB enabled an ATO and failed to "research" the events surrounding such ATO. EWB failed to supervise Ms. Zhang, deliberately intending that any communication between Ms. Zhang and Plaintiffs be used by Ms. Zhang to further EWB's interests in bolstering its business.

170. Specifically, the failure of EWB's security measures or policies constitute a breach of the implied covenant and, additionally, EWB's failure to supervise Ms. Zhang resulted in a misappropriation of Plaintiffs' information and funds for which Plaintiffs suffered harm and damages through their reliance on EWB's promise to safeguard all such information and funds.

## FOURTEENTH CAUSE OF ACTION

### (Business and Professions Code §17200 – Against Defendants BANK OF AMERICA, EAST WEST BANK and JC PACIFIC CAPITAL, INC.)

171. Plaintiffs re-allege and by this reference incorporate each and every allegation contained in paragraphs 1 through 20, inclusive, of this Complaint as if set forth in this cause of action in full.

172. Here, BANK OF AMERICA ("BOA") is a bank purporting, through its marketing, consumer recognition, to do business as an organization which collects the funds of individuals or organizations, pledging to keep such funds secure until a further claim upon the

funds and charges fees for such secure keeping. To further its purposes of keeping such funds secure, BOA purports to have several measures in effect including insurance or verification of identity, keeping identity verification documents on file including, but not limited to, driver license, passport copy or fingerprints.

173.    Given BOA's purported expertise, knowledge, experience or recognition in banking, Plaintiffs XLIU and ZHANG reasonably relied that BOA had such security measures or policies in effect because it appeared to Plaintiffs XLIU and ZHANG that BOA was reputable as a result of its widespread presence throughout California.

174.    On March 6, 2020, Plaintiffs XIAOLIANG LIU ("XLIU") and CHUWEI ZHANG ("ZHANG"), went to a BOA branch located at 6519 Quail Hill Parkway, Irvine, CA  92603, and opened bank accounts with assistance from Carrie Gao, BOA's banker or employee.

175.    In reliance that BOA was in the business of banking as set forth in Paragraphs 24 through 26, above, XLIU and ZHANG, upon issuance of account numbers by BOA, placed $100,000 each, for a total of $200,000 into the accounts BOA purported it would keep Plaintiffs XLIU and ZHANG's monies secure.

176.    Furthering BOA's pledge to Plaintiffs that it would keep their funds secure, were documents provided to Plaintiffs at account opening on March 6, 2020, which stated that deposits were insured by the "FDIC" or the Federal Deposit Insurance Corporation. Said documents did not include any admonishment, notice, warning or communication of adverse consequences or acts constituting waiver of the security of said funds. Thus, Plaintiffs XLIU and ZHANG placed their monies or funds in BOA bank accounts because they believed their funds were secure.

177.    However, as Plaintiffs XLIU and ZHANG learned on October 27, 2020—it was not the case that Plaintiffs' monies as entrusted to be held by BOA were secure. On October 21, 2020, an unidentified female went to a BOA and further aided by BOA's unsupervised, incompetent or untrained employees, succeeded in the complete replacement of identifying documents as purported to be on file with BOA for Plaintiff ZHANG's benefit or account security.

178.   Additionally, on the same day, October 21, 2020, following or concurrently with the changes made to Plaintiff ZHANG's BOA accounts, an alleged elderly gentleman in another BOA branch attempting to also do an account takeover, or ATO, of Plaintiff XLIU's BOA accounts. However, said elderly gentleman could not adequately answer verification questions and was permitted by BOA and/or its employees to successfully depart the BOA branch without any arrest or adverse action taken on such an attempt by the alleged elderly gentleman upon the BOA accounts of Plaintiff XLIU.

179.   The failures of BOA as set forth hereinabove added to Plaintiffs damages and for which Plaintiff now seek relief from this court as against BOA.

180.   EAST WEST BANK ("EWB") is a bank purporting, through its marketing, consumer recognition, to do business as an organization which collects the funds of individuals or organizations, pledging to keep such funds secure until a further claim upon the funds and charges fees for such secure keeping. To further its purposes of keeping such funds secure, EWB purports to have several measures in effect including insurance or verification of identity, keeping identity verification documents on file including, but not limited to, driver license, passport copy or fingerprints.

181.   Given EWB's purported expertise, knowledge, experience or recognition in banking, Plaintiff XLIU reasonably relied that EWB had such security measures or policies in effect because it appeared to Plaintiff XLIU that EWB was reputable as a result of its widespread presence throughout California.

182.   On July 6, 2020, Plaintiff XIAOLIANG LIU ("XLIU") went to an EWB branch located at 1001 Fair Oaks Avenue, South Pasadena, CA  91030, and opened bank accounts with assistance from Eva Zhang, EWB's banker or employee.

183.   In reliance that EWB was in the business of banking as set forth in Paragraphs 36 through 38, above, XLIU, upon issuance of account numbers by EWB, placed funds into the accounts EWB purported it would keep Plaintiff XLIU's monies secure. However, as a result of EWB's failure to supervise its employee/banker, Eva Zhang, as set forth in paragraphs 50 through 54, EWB was untruthful in its dealings with Plaintiff XLIU, including

1  Plaintiff XLIU's subsequent dealings with LU and WU and for which Plaintiffs XLIU and

2  ZHANG have now suffered harm or damage.

3      184.   Plaintiffs XLIU and ZHANG hereby incorporate paragraphs 54 through 60,

4  above, as though fully set forth here by reference. Specifically, Plaintiffs XLIU and ZHANG

5  allege that JC were not truthful in its representations to the DRE as to its supervision of LU

6  and WU and, as such plaintiffs have suffered harm or damage.

7  **FIFTEENTH CAUSE OF ACTION**

8  **(Negligence – Against BANK OF AMERICA, EAST WEST BANK, JC PACIFIC CAPITAL**

9  **BANK)**

10     185.   Plaintiffs re-allege and by this reference incorporate each and every allegation

11  contained in paragraphs 1 through 184, above, of this Complaint as if set forth in this cause

12  of action in full.

13     186.   California <u>Civil Code</u> §1714(a) states, in pertinent part:

14          Everyone is responsible, not only for the result of his or her willful
           acts, but also for an injury occasioned to another by his or her
15          want of ordinary care or skill. . .

16     187.   When BOA permitted its employees to affect a complete replacement of

17  identifying documents of Plaintiff ZHANG, it would also be responsible for any injury

18  occasioned by its failure to supervise, hire or train its employees. Additionally, when BOA

19  delayed, misrepresented or otherwise failed in its "research" or investigation as to Plaintiff

20  ZHANG's funds, BOA also failed to exercise ordinary care or skill. As a result of such failure

21  by BOA, Plaintiffs XLIU and ZHANG have been harmed or damaged.

22     188.   As further set forth in the incorporated paragraphs as to Plaintiffs XLIU and

23  ZHANG's causes of action for Breach of Contract, Negligent Hiring/Supervision and

24  Negligent Misrepresentation, Defendant BOA had a preexisting duty to act with reasonable

25  prudence, in accordance with its contractual duties as set forth above. It was foreseeable to

26  BOA that its failure to fulfill its contractual obligations, through its negligent hiring, supervision

27  or training would result in emotion distress, harm or damages to Plaintiffs XLIU and ZHANG.

28     189.   As set forth in the incorporated paragraphs, or Plaintiffs XLIU and ZHANG's

causes of action for Breach of Contract, Negligent Hiring/Supervision and Negligent Misrepresentation, Defendant EWB had a preexisting duty to act with reasonable prudence, in accordance with its contractual duties as set forth above. It was foreseeable to EWB that its failure to fulfill its contractual obligations, through its negligent hiring, supervision or training would result in emotional distress, harm or damages to Plaintiffs XLIU and ZHANG.

190.   JC had a statutory duty, to take diligent steps to supervise its salesperson, LU, particularly in its trust accounting practices in taking any monies from any member of the public. JC breached said duty to supervise and train and, in such breach or failure, it was foreseeable to JC that some member of the public would suffer harm, directly or proximately. As such, Plaintiffs XLIU and ZHANG were members of the public who tendered monies to LU and WU and said tender was not handled in accordance with JC's statutory duties. Thus, Plaintiffs XLIU and ZHANG were harmed or damaged.

## PLAINTIFFS RESPECTFULLY REQUEST A TRIAL BY JURY

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly or severally, as follows:

<u>As to Plaintiffs XLIU and ZHANG's First, Third and Fourth Causes of Action</u>:

1.   For compensatory, consequential and reliance damages including attorneys' fees;

2.   For costs of suit incurred; and

3.   For such other and further relief as the Court deems just and proper.

<u>As to Plaintiffs XLIU and ZHANG's Second, Eighth, Eleventh and Fifteenth Causes of Action</u>:

1.   For general and special damages, including but not limited to pain and suffering, mental and emotional distress, property damages, medical expenses incurred, future medical expenses, including economic and non-economic damages, including attorneys' fees;

2.   For costs of suit; and

3.   For such other and further relief as the Court deems just and proper.

**COMPLAINT [FIFTEEN CAUSES OF ACTION]**

1   / / /

2   / / /

3   As to Plaintiffs XLIU and ZHANG's Fifth, Sixth, Seventh, Ninth, Tenth, Twelfth and

4   Thirteenth and Fourteenth Causes of Action:

5       1.    For general, special and punitive damages, including economic and non-

6           economic damages, including attorneys' fees;

7       2.    For costs of suit; and

8       3.    For such other and further relief as the Court deems just and proper.

9   Dated:  September 2, 2022          **LAW OFFICES OF DIANE CORWIN**

10

11                     By:

12                       DIANE CORWIN
                          Attorney for Plaintiffs

13                       XIAOLIANG LIU and CHUWEI ZHANG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT [FIFTEEN CAUSES OF ACTION]